**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cr-722-2 (TFH) |
| | ) | |
| MARYANN MOONEY-RONDON | ) | |
| _____ | ) | |

**DEFENDANT MOTION TO DISMISS COUNT ONE IN THE INDICTMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES**

Maryann Mooney-Rondon, by and through undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, respectfully submits this Motion and Memorandum of Points and Authorities in Support seeking Dismissal of Count One (1) of the Indictment, which charges her with obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2). Ms Mooney-Rondon respectfully requests Oral Argument.

**I. PROCEDURAL HISTORY**

On September 2, 2021, Defendant Maryann Mooney-Rondon was charged by Complaint with various offenses related to the allegations regarding her actions at the Capitol on January 6, 2021. Complaint (September 29, 2021) (ECF No. 1). On October 1, 2021, Ms Rooney-Rondon was arrested, making her initial appearance before Magistrate Judge G Michael Harvey on October 14, 2021. The Government did not seek pretrial detention and Ms Rooney-Rondon was subsequently released on her personal recognizance. A preliminary hearing was set for December 14, 2021, but later vacated. Ms Rooney-Rondon remains released on her personal recognizance.

**II. LEGAL STANDARD**

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1). A defendant may move to dismiss an indictment on the grounds that, inter alia, it fails to state an offense or contains multiplicitous counts. Fed. R. Crim. P. 12(b)(3)(B). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007). An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id*. In addition, to be sufficient, an indictment must "fairly inform[] [the] defendant of the charge against which [s]he must defend, and [] enable[] [him] to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Lastly, "[i]t is an elementary principal of criminal pleading, that where the defendant of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species—it must descend to particulars." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

## III.  ARGUMENT

Section 1512(c)(2) of Title 18 of the United States Codes provides:

> (c) Whoever corruptly—
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or

> (2)  otherwise obstructs, influences, or impedes any official proceeding or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

In this and in other cases arising from the events that occurred on January 6, 2021, the government contends that in enacting Section 1512(c), Congress intended to arm prosecutors with a broad catch-all provision capturing *any* conduct so long as "corruptly" intended to disrupt an "official proceeding" and that the legislature did so by wedging the provision among other sections precluding witness tampering and document destruction.

However, the Department of Justice itself originally summarized breadth of section 1512 as follows:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.

Dep't of Justice, United States Attorneys' Manual, Title 9, Criminal Resource Manual 1729 (2020).

Nonetheless, the government has taken the position the word "otherwise,", serves as a clean break between subsections (c)(1) and (2), and thus the only question is whether Ms Rooney-Rondon "corruptly . . . .obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so." The result is effectively no relationship between subsections (c)(1) and (c)(2) at all. This interpretation of the statute, however, falls victim to the same criticism levied by Justice Kagan against sister-Section 1519 in her *dissent* from a majority of the Supreme Court in its opinion in *Yates v. United States*, 574 U.S. 528 (2015): "I tend to think, for the reasons the plurality gives, that § 1519 is a bad law— too broad and undifferentiated, with too-high maximum penalties, which give prosecutors too much leverage and sentencers too much discretion." *Id.* at 570 (Kagan, J., dissenting). *See also Begay v. United States*, 553 U.S. 137, 143

(2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015)

(concluding that text preceding "otherwise" influenced the meaning of the text that followed: it

"limit[ed] the scope of the clause to crimes that are *similar to the examples themselves*."

(emphasis added)).

Alternatively, Count One (1) as pleaded fails to include facts essential to the charge, thus

robbing Ms Rooney-Rondon of the ability to prepare a proper defense. Specifically, the

government has failed to allege that anyone "corruptly" did anything, that any "official

proceeding" was implicated, or what conduct by Ms Rooney-Rondon constitutes any *actus reus*

amounting to an "attempt[] to," and allegedly successful "corruptly obstruct[ion], influence, and

impede[ment] [of] an official proceeding."

Finally, if recourse to any of the "traditional tools of statutory construction leaves any

doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding

before Congress" as those terms are used in Section 1512(c)(2), this Court should also invoke the

Rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of

lenity." *Yates*, 574 U.S. at 547-48) (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)).

A. Section 1512(c)(2) Does Not Criminalize the Conduct Alleged in the Indictment.

In Count One (1) of the Indictment, it is alleged that:

> On or about January 6, 2021, within the District of Columbia and elsewhere, [Ms Rooney-Rondon] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

In so doing, the Indictment purports to "echo the operative statutory text while also

specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 140

(D.C. Cir. 2018). This recitation of the elements of the offense ignores the inclusion of the word

"otherwise" preceding "obstructs, influences, or impedes" and thus ignores the relationship between subsections (c)(2) and (c)(1) of Section 1512. Confronted with nearly identical indictment language and tasked with determining the import of the word "otherwise" in subsection (c)(2), Judge Nichols, after reviewing the "text, structure, and development" of Section 1512(c)(2), concluded: "there are two plausible interpretations of the statute: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2)." *United States v. Miller*, 1:21-CR-119 (CJN), 2022 U.S. Dist. LEXIS 45696 at *39 (D.D.C. March 7, 2022).

Judge Nichols's statutory interpretation of the purpose of including "otherwise" in Section 1512(c)(2) is persuasive on its own and Ms Rooney-Rondon does not now repeat that rationale. Of note, Judge Nichols's conclusion *is also* consistent with the Supreme Court's consideration of a nearly identical challenge to the same chapter of the criminal code in *Yates*. Specifically, at issue was whether the breadth of a sister-section, 18 U.S.C. § 1519, was unconstitutional. A majority of the Court concluded it was and reversed a fisherman's conviction under an "accountant's offense" – both § 1512(c) and § 1519 were "originally passed to confront the sort of document destruction conducted by Anderson Consulting in the early days of the Enron investigations." *See* Gregory M. Gilchrist, Regulation by Prosecutor, 56 Am. Crim. L. Rev. 315, 338 (2019). *See also Yates*, 574 U.S. at 535 ("The Sarbanes-Oxley Act, *all agree*, was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." (emphasis added)). The fisherman had been convicted for "destruction" of evidence – illegally caught fish – with the "intent to impede, obstruct, or influence" an investigation. *Yates*, 574 U.S. at 531. Although the Court agreed the statute as

applied to Yates was unconstitutionally broad, it did not agree on the manner by which to reach that conclusion. Regardless of the approach taken here, however, *Yates* dictates that the government's application of Section 1512(c)(2) to Ms Rooney-Rondon is unconstitutionally overbroad.

i.      *The Yates Court's "Narrow Grounds" Favors Dismissal*

As the concurrence of Justice Alito presents the narrowest grounds upon which the Court reached its holding, is serves as the binding opinion of the Court. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (internal quotation marks omitted)). In Justice Alito's view, the Court could reach a determination as to the statutory interpretation of the meaning of Section 1519 by considering that section's nouns and verbs, as well as its title. *See Yates*, 574 U.S. at 549-552 ("Although perhaps none of these features by itself would tip the case in favor of Yates, the three combined do so.") (Alito, J., concurring).

Here, Section 1512(c)'s nouns are limited to "records, documents, or other objects," precluding the "alter[ation], destr[uction], mutilat[ion], or conceal[ment]" of which that "impair[s] the object's integrity or availability for use in an official proceeding." Put differently, the statute prohibits *tampering with a record to impede an official proceeding*. The additional verbs that follow: "obstruct[], influence[], or impede[]" which itself are modified by the adverb "otherwise," must be read collectively with the actions – the verbs – that precede.

To be sure, Justice Alito acknowledged the shortcomings of relying solely on the nouns and verbs within a section to derive legislative intent and/or meaning, *see Yates*, 574 U.S. at 551

("focusing on the verbs, the category of nouns appears to be filekeeping [and while] [t]his observation is not dispositive, . . . *neither is it nothing*"), ultimately the section's title tipped the scales. Title IX of the Sarbanes-Oxley Act – the "*Corporate* Fraud Accountability Act of 2002" (emphasis added) – provides § 1512(c)'s language within a section titled: "Tampering With a Record or Otherwise Impeding An Official Proceeding." The section's title thus affirms the foregoing interpretation – "or otherwise obstructs, influences, or impedes and official proceeding" is intended to be read collectively with the statute's prohibition of *tampering with a record to impede an official proceeding.*

> ii.     *The Yates Court's Plurality Opinion is Similarly Persuasive*

The broader opinion by the *Yates* Court's plurality is similarly persuasive and provides guidance as to additional "interpretive evidence" that similarly tip the scales in favor of defendants.

*First*, the *Yates* Court's plurality observed that the government's proposed interpretation of Section 1519 would "cut [it] loose from its financial-fraud mooring to hold that it encompasses any and all [conduct]." *Yates*, 574 U.S. at 532. Here too would this Court be remiss by ignoring the historical framework that saw the passage of the Sarbanes-Oxley Act. The legislative history of the Act clearly articulates that its purpose was to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation financial audit records." S. Rep. No. 107-146, at 14-15. Introduced as an amendment, Senator Trent Lott explained that the proposed amendment, which added among other provisions § 1512(c), would enact stronger laws against document shredding: "Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending

and a subpoena has been issued for the evidence that has been destroyed or altered . . . ." 148

Cong. Rec. S6542, S645 (daily ed. July 10, 2002).

*Second*, the *Yates* Court's plurality was persuaded by the placement of Section 1519 in

the "Obstruction of Justice" chapter of the Criminal Code. The government would have this

Court rule that it is purely coincidental that a broad catch-all it seeks passed as part of the

"Corporate Fraud Accountability Act of 2002" and was wedged haphazardly within a section

titled, "Tampering with a witness, victim, or an informant," and following a prohibition on

tampering with documents so as to affect the obstruction of an "official proceeding." As the

Plurality observed in *Yates*:

> Congress directed placement of [Sarbanes-Oxley's other additions] within or alongside
> retained provisions that address obstructive acts relating broadly to official proceedings
> and criminal trials: . . . § 1102, 'Tampering with a record or otherwise impeding an
> official proceeding,' was codified as § 1512(c) *and inserted with the pre-existing § 1512,*
> *which addresses tampering with a victim, witness, or informant to impede any official*
> *proceeding.*"

*Yates*, 574 U.S. at 540-41 (emphasis added).

*Third*, the *Yates* Court's plurality observed that the types of records captured by Section

1512(c) was more expansive than those captured by Section 1519. Such a broad reading of the

language of Section 1512(c)[1] further supports the assertion that § 1512(c)(2) was intentionally

tethered to the tampering of documents, which "otherwise" resulted in the disruption of an

official proceeding. It does not require the progressive conclusion that Congress therefore must

have intended to preclude *any* conduct effecting the obstruction of an official proceeding. *C.f.*

*Yates*, 574 U.S. at 540 ("If Congress indeed meant to make §1519 an all- encompassing ban on

---

[1] At the outset, whether the records referenced by Section 1512(c)(1) are intended to broadly include "any and every
physical object," *Yates*, 574 U.S. at 541, was not an issue argues before the *Yates* Court (specifically, it was disputed
by neither the defendant nor the government).

the spoliation of evidence, as the dissent believes Congress did, one would have expected a clearer indication of that intent").

*Fourth*, the *Yates* Court's plurality also found persuasive the statutory construction canon of surplusage.[2] At a minimum, conduct made unlawful by at least eleven subsections—§§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1) — all proscribe conduct that could instead be prosecuted under a liberally construed Section 1512(c)(2), as could conduct falling within the scope of the other obstruction statutes, 18 U.S.C. §§ 1503 & 1505. The government's apparent reading of § 1512(c)(2) thus results in a wholesale transformation of numerous statutory provisions into surplusage, a situation unacceptable for any statute, let alone a criminal one. *See generally Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994) (courts should avoid treating any statutory terms as surplusage, and resistance to such a result "should be heightened when the words describe an element of a criminal offense." As Judge Nichols observed, although "superfluity is not typically, by itself, sufficient to require a particular statutory intention," "here, such substantial overlap within the same section suggests that Congress did not mean § 1512(c)(2) to have so broad a scope." *United States v. Miller*, 1:21-CR-119 (CJN), 2022 U.S. Dist. LEXIS 45696 at *29-30 (D.D.C. March 7, 2022). (citing *Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995). Moreover, the replacement by Section 1512(c)(2) of a number of obstruction provisions in the criminal code would substitute that section's 20-year maximum sentence for the substantially lesser penalties that Congress

---

[2] Of course, the *Yates* Court's plurality also found persuasive the statutory construction canons of noscitur a sociis and ejusdem generis, concluding, as here, that together with all such "interpretive evidence" that the Court should more narrowly construe the statute born of the corporate fraud from the Enron scandal.

previously deemed appropriate for the conduct specifically proscribed by 18 U.S.C. §§ 1503, 1505, 1512(a) 1512(b), and 1512(b).

Consider, for example, the conduct proscribed by 40 U.S.C. § 5104, which precludes "[a]n individual or group of individuals [from] willfully and knowingly . . . enter[ing] or remain[ing] in a room in any of the Capitol Buildings set aside or designated for the use of (i) either House of Congress or a member, committee, officer, or employee of Congress, or either House of Congress . . . with the intent to disrupt the orderly conduct of official business." The government's interpretation effectively subsumes this statute (unless, of course, the government instead sought a less offense). While Congress, in its prerogative, may criminalize conduct through multiple statutes, its interpretation of § 1512(c), *as applied here*, gives no notice to the person "of ordinary intelligence," *see United States v. Harriss*, 347 U.S. 612, 617 (1954), that the conduct alleged to have occurred on January 6 was a 20-year felony, under § 1512, as opposed to a misdemeanor under § 5104.

B.    <u>The Indictment Fails to Plead Essential Elements</u>.

"An indictment must contain the essential facts constituting the charged offense." Order Denying Mot. Reconsider at 4, *United States v. Miller*, No. 1:21-CR-119 (CJN), 2022 U.S. Dist. LEXIS 95145, at *5 (D.D.C. May 27, 2022). "[T]he true test is, not whether [the criminal indictment] might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." *Cochran v. United* States, 157 U.S. 286, 290 (1895). *See also United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."); *id.* at 559 ("[T]he indictment should state the particulars, to inform the court as well as the accused.

It must be made to appear—that is to say, appear from the indictment, without going further—that the acts charge will, if proved, support a conviction for the offence alleged."). As then-District Court Judge Jackson recently explained: "importantly for present purposes, '[i]t is an elementary principle of criminal pleading[] that where the definition of an offen[s]e in the same generic terms as in the definition; but it mist state the species[]—it must descend to particulars." *United States v. Hillie*, 227 F. Supp. 3d 57, 71-72) (D.D.C. 2017) (alterations original) (quoting *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971)).

Here, the operative indictment fails to include facts essential to the charge, thus robbing Ms Rooney-Rondon of the ability to prepare a proper defense. Specifically, the government has failed to allege that anyone "corruptly" did anything, that any "official proceeding" was implicated, or what conduct by Ms Rooney-Rondon constitutes any *actus reus* amounting to an "attempt[] to," and allegedly successful "corruptly obstruct[ion], influence, and impede[ment] [of] an official proceeding."

### i.    *The Indictment Fails to Allege Corrupt Intent*

The Court must dismiss Count One of the Indictment because of Section 1512(c)(2)'s reliance on the unconstitutionally vague term "corruptly" in conjunction with the phrase to "otherwise obstruct[], influence[], or impede[] any official proceeding." In the alternative, if there is any construction of "corruptly" that would enable the statute to pass constitutional muster, it is that "corruptly" as used in Section 1512(c)(2), means to act with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice.

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair

notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."

*Johnson v. United States*, 576 U.S. 591, 595–96 (2015). *See also Kolender v. Lawson*, 461 U.S.

352, 357–58 (1983)) ("[A] penal statute must define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner

that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors,

and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*,

269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in

terms so vague that men of common intelligence must necessarily guess at its meaning and differ

as to its application, violates the first essential of due process of law."). The allegations against

Ms Rooney-Rondon in Count One of the Indictment fail in both respects.

> a)      *"Corruptly" is Unconstitutionally Vague*.

In *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991), the D.C. Circuit ruled that

the word "corruptly" is prone to causing vagueness. There, the court considered use of the term

in Section 1505 of Title 18 of the United States Code, which criminalizes:

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication
> influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due
> and proper administration of the law under which any pending proceeding is being had
> before any department or agency of the United States, or the due and proper exercise of
> the power of inquiry under which any inquiry or investigation is being had by either
> House, or any committee of either House or any joint committee of the Congress –

18 U.S.C. § 1505.

The court concluded that the word "corruptly" in the text "must have some meaning,

because otherwise the statute would criminalize all attempts to 'influence' congressional

[proceedings] – an absurd result that Congress could not have intended in enacting the statute."

*Poindexter*, 951 F.2d at 377. Beginning with the plain meaning of the term, the court concluded

no dictionary definition was controlling:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F. 2d 843, 881-82 (D.C. Cir. 1990)).

Thus, the D.C. Circuit acknowledged, as this Court must as well, that, "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id*. at 378. And, just as the court found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id*., this Court must acknowledge that the conduct alleged in the operative indictment –would similarly violate another statute –40 U.S.C. § 5104 – and thus does not clearly fall within Section 1512(c)(2)'s proscription against "corruptly . . . otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding."

Applying *Poindexter*, the only way the use of the word "corruptly" in Section 1512 passes constitutional muster if it is "clearly indicates a more specific meaning" and Ms Rooney-Rondon's "conduct comes within that meaning." *Id*. at 379. Thus, like in *Poindexter*, "if specific content is not given to the word 'corruptly[,]' [r]eading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself." *Id*. Because no obvious specific content applies to the use of the word "corruptly" – whether transitively or intransitively – the word lacks definition and remains too vague to provide constitutionally-required notice.

b)       *The Only Permissible Narrower Definition of "Corruptly" Does Not Save the Indictment*.

If Congress meant something narrower than "wrongfully" when it used "corruptly" in Section 1512(c)(2), then it meant "to act knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice" in a tribunal-like forum. *United States v. Coppin*, 569 F. App'x 326, 334 (5th Cir. 2014). That is, the context and history of Section 1512(c), show that, in drafting Section 1512(c)(2), if Congress was considering anything more than the unconstitutionally vague concept of "wrongfulness" when it used the term "corruptly," it must have intended to protect the integrity of proceedings in which parties come "before" tribunal-like bodies that are administering justice from those who act with the intent of interfering with the administration of justice, or the intent of obtaining an unlawful advantage in such fora. *See also United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) (stating that pressuring a witness to lie to investigators "falls comfortably within the ambit of the statute"); *United States v. Jones*, 207 F. Supp. 3d 576, 584 (E.D.N.C. 2016) (stating that attempting to cause a federal magistrate judge to compel a phone company to produce text messages to a law enforcement officer for which no law enforcement basis exists is understood to be proscribed by the statute).

Indeed, the definition that the Seventh Circuit's model jury instructions for Section 1512 reflect this understanding of "corruptly," providing that, "A person acts "corruptly" if he or she acts with the purpose of wrongfully impeding the due administration of justice." Pattern Criminal Jury Instructions of the Seventh Circuit (2020 ed.) at 629 (emphasis added)[3]. To that end, every

---

[3] *Available at* https://www.ca7.uscourts.gov/pattern-jury-instructions/pattern_criminal_jury_instructions_2020edition.pdf (last visited May 31, 2022).

court of appeals that has considered the definition of "the due administration of justice" has held

that it refers to judicial proceedings or investigations. *United States v. Richardson*, 676 F.3d 491,

502-503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with

the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279-80

(11th Cir. 1997) ("due administration of justice" means "judicial procedure" and "the

performance of acts required by law in the discharge of duties such as appearing as a witness and

giving thoughtful testimony when subpoenaed"); *United States v. Warlick*, 742 F.2d 113, 116

(4th Cir. 1984) (defining obstruction of the "administration of justice" as acts that "thwart the

judicial process"); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981) ("administration

of justice" commences with "a specific judicial proceeding"). *See also United States v. Delgado*,

984 F.3d 435, 453 (5th Cir. 2021) ("a person acts 'corruptly' under [§ 1512(c)(2)] when they act

knowingly and dishonestly, with specific intent to subvert or undermine the due administration

of justice"); *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011) ("corruptly" means acting

"with an improper purpose and to engage in conduct knowingly and dishonestly with the specific

intent to subvert, impede or obstruct the [forfeiture proceeding]. . ." (alterations original)

(emphasis added) (citing *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)).

Given the only permissible definition of "corruptly" in Section 1512(c)(2) requires some

allegation as to Ms Rooney-Rondon's purported intent, the Count One of the Indictment must be

dismissed.

<em>ii.     The Certification of the Electoral College is Not an "Official<br>Proceeding."</em>

As then-Vice-President Pence observed on January 6, 2021, "the powers of the President

of the Senate are merely ministerial. . . . He is not invested with any authority for making any

investigation outside of the Joint Meeting of the two Houses . . . [I]f any examination at all is to

be gone into, or any judgment exercised in relation to the votes received, it must be performed

and exercised by the two Houses." Letter to Congress from Vice-President Michael R. Pence

(Jan. 6, 2021),[4] (quoting William Draper Lewis, Miscellaneous Writings of the Late Hon. Joseph

P. Bradley 167 (1901)). As the late Justice Joseph Story opined: "In the original [electoral

college] plan, as well as in the amendment, no provision is made for the discussion or decision of

any questions, which may arise as to the regularity and authenticity of the returns of the electoral

votes," rather, "nothing more [is] necessary, than to open the certificates, which were produced,

in the presence of both houses, and to count the names and numbers, as returned." 3 Joseph

Story, Commentaries on the Constitution of the United States § 1464, at 327). For its part, the

Constitution provides only that, "[t]he President of the Senate shall, in the presence of the Senate

and House of Representatives, open all certificates and the votes shall then be counted." U.S.

Const. amend. XII.[5] In a word, the process is *ceremonial*.

Indeed, when considering Congress's role in counting electoral votes pursuant to the 12th

Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15, it is clear that

the electoral count is a ceremonial and administrative event, bearing no resemblance to a

tribunal. The Twelfth Amendment and 3 U.S.C. § 15 place responsibility on Congress to count

electoral votes after the states have already heard disputes and certified the vote. *See Bush v.

Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, J., concurring) (the "State's selection of electors shall

be conclusive, and shall govern in the counting of the electoral votes."). At no time during the

certification of the electoral college did Congress, or the Vice-President, have any authority to

---

[4] *Available at* https://twitter.com/Mike_Pence/status/1346879811151605762 (last visited May 31, 2022).
[5] The Twelfth Amendment to the Constitution overwrote the original electoral college process within Article II, which provided, in relevant part, that "The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates and, the Votes shall then be counted."). U.S. Const. art. II, § 1, cl. 3. The Twelfth Amendment served to avoid the election of a president and vice-president from opposite parties, as in the elections of 1796 and 1800.

actually reject the ballots of any State's electors. *See* Vasan Kesavan, Is the Electoral Count Act Unconstitutional?, 80 N.C. L. Rev. 1653, 1709 (2002).

Moreover, even if the certification of the electoral college is an "official" act, it is not a proceeding. As held by the Seventh Circuit, '[t]o be liable under § 1512(c)(2), a defendant must obstruct or impede an "official proceeding." *A separate section of the statute defines "official proceeding" as "a proceeding before a judge or court of the United States . . . or a Federal grand jury."' United States v. Burge*, 711 F.3d 803, 808, (7th Cir. 2013) (certiorari denied by *Burge v. United States*, 134 S. Ct. 315, 187 L. Ed. 2d 156, (2013) citing 18 U.S.C. § 1515(a)(1)(A) (emphasis added)). No one appears "before" the Congress; no formal investigation or consideration of facts ensues; and there is little to no discretion afforded either Congress or its Presiding Officer. No parties are summoned to attend the proceedings; no witness or evidence is produced, offered or taken; and nothing is adjudicated by Congress. As such, the certification contrasts with tribunal proceedings, and have nothing in common with the "business done in courts," or acts "done by the authority or direction of the court, express or implied." *See United States v. Ermoian*, 752 F.3d 1165, 1170 (9th Cir. 2013) ("'Proceeding' is a word much used to express the business done in courts and "is an act done by the authority or direction of the court, express or implied.") (quoting Black's Law Dictionary commentary, cited supra at 1241).

The history of "objections" lodged at the Electoral Count further demonstrate the ceremonial nature of the electoral count. The past objections were mostly made in the 1800's because of the confusion of when new states were admitted to the union and how that impacted whether their votes should count. Objections were ultimately rejected because it was determined that the Joint Session did not have the authority to judge the proceedings already had in the states. *See* Kesavan, *supra* at 1678-94. In 1876, the most tumultuous American election thus far,

Samuel Tilden and Rutherford Hayes were separated by one electoral vote and four states sent Congress multiple electoral returns. *Id.* Instead of the Joint Session resolving this issue (because Congress recognized that the Joint Session did not have the authority to do so), Congress formed a separate commission to sort through the chaos and decide the issues of fact and law presented. *Id.* Subsequently, to address issues like this in the future, Congress enacted the Electoral Count Act of 1887, placing on the states the responsibility to resolve disputes about electors and their appointments and certifications. *See* Stephen A. Siegel, The Conscientious Congressman's Guide to the Electoral Count Act of 1887, 56 Fla. L. Rev. 540, 543 (July 2004). In 1969, there was an objection that a vote sent to Congress from North Carolina should not be counted because it reflected the "faithless" elector who had refused to give his vote to Richard Nixon, despite Nixon winning the popular vote in that state. The objection was rejected, and the vote at issue counted, because of the strong reminder of representatives such as John Richard Rarick who said: "We are not election supervisors nor given the discretion to re-compute the vote received from a sovereign state. The Constitution clearly proscribes our duty as to 'count the electoral votes,' the ministerial function of a central collecting agency and a tabulating point." *Kesavan*, *supra* at 1694, 2022 (emphasis added).

For all these reasons, the Electoral Count is not "a proceeding" akin to a formal hearing seeking testimony and it is not "tribune-like,' as this Court found to be required in *Guertin*. Rather, it is a ceremonial meeting of both houses of Congress. While steeped in tradition, it decides nothing. It is a political performance conducted in order to give the country a feeling of finality over the already final election results. As a result, the Electoral Count is not an "official proceeding" and Count One of the Indictment should be dismissed.

       *iii.*    *The Indictment Lacks Notice of Any Alleged* Actus Reus.

"[W]hen a statute is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue, merely echoing [the words of a statute and adding the time and location of the alleged offense] is *not* enough." Order Denying Mot. Reconsideration at 7, *United States v. Miller*, No. 21-cr-00119 (May 27, 2022) (ECF No. 86) (emphasis original). *See id.* "'[Echo[ing] the operative statutory text while also specifying the time and place of the offense" can be sufficient, [but] those cases [to so hold] involved criminal statutes that are sufficiently precise such that merely echoing the statutory language in the indictment provides enough specificity to apprise a reasonable defendant of his allegedly unlawful act." (citing *Williamson*, 903 F.3d at 130; *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014)).

"In the specific context of this statute, under the government's interpretation, just about any *actus reus* could satisfy the statute." *Id.* at 8. Like in *Miller*, the operative indictment provides no further detail as to what conduct by Ms Rooney-Rondon the government considers the *actus reus*. Also like in *Miller*, "that act is an essential element of the crime." *Id.* at 10.

As a result, Count One (1) of the Indictment must be dismissed.

C.     The Rule of Lenity Provides Confirmation That the Court Should Dismiss Count One.

Finally, if recourse to any of the "traditional tools of statutory construction leaves any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000), in turn quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). As it was in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section

1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id*. (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985)) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

"In determining the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512, as it was for the Court in interpreting Section 1519 in *Yates*, it would also be "appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id*. (quoting *Cleveland*, 531 U.S. at 25, in turn quoting *United States v. Universal C.I.T. Credit Corp*., 344 U.S. 218, 222 (1952)). Because Congress failed to do so, and the government has accused Ms Rooney-Rondon such that it is not "clear and definite" that her conduct violates Section 1512(c)(2), this Court should dismiss Count One of the Indictment against her.

**IV .   CONCLUSION**

For the foregoing reasons, Maryann Rooney-Rondon respectfully requests that this Court Order the Dismissal of Count One of the Indictment.

Respectfully Submitted,

/s/  *Peter A. Cooper*

Peter A. Cooper, (#478-082)
400 Fifth Street, NW.
Suite 350
Washington DC 20001
pcooper@petercooperlaw.com
Counsel for Maryann Rooney-Rondon

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a copy of the foregoing Motion to Dismiss Count One of the Indictment is being filed via the Electronic Court Filing System (ECF), causing a copy to be served upon government counsel of record, this 23rd day of November, 2022.

                                /s/ *Peter A. Cooper*

                                Peter A. Cooper