IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : Case No: 1:21-cr-00722-JMC |
| v. | : |
| MARYANN MOONEY-RONDON, | : |
| Defendant. | : |

### STATEMENT OF FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, MARYANN MOONEY-RONDON, with the concurrence of her attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial as to Counts 1 and 3 of the Indictment.

**I.  Elements**

As to Count 1 of the indictment, the essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt are as follows:

1. The defendant attempted to or did obstruct or impede an official proceeding;
2. The defendant intended to obstruct or impede the official proceeding;
3. The defendant acted knowingly, with awareness that the natural and probable effect of her conduct would be to obstruct or impede the official proceeding; and
4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant

aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;
2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;
3. The defendant performed an act or acts in furtherance of the offense;
4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and
5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

As to Count 3 of the indictment, the essential elements of theft of government property, in violation of 18 U.S.C. § 641, are as follows:

1. An unidentified male took one laptop computer located in the offices of a member of the U.S. Congress;
2. The laptop computer belonged to the United States at the time it was taken;
3. When the unidentified male took the laptop computer he intended to deprive, without right, the owner of the use or benefit of the laptop computer; and
4. The laptop computer taken had a value of less than $1,000.

The government alleges that the defendant aided and abetted others in theft of government property. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. An unidentified male committed theft of government property by committing each of the elements of the offense charged;

2. The defendant knew that theft of government property was going to be committed or was being committed by the unidentified male;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the unidentified male in committing the theft of government property; and

5. The defendant did that act or acts with the intent that the unidentified male commit the offense of theft of government property.

## II. Statement of Offense

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3,

2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Maryann Mooney-Rondon's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, MARYANN MOONEY-RONDON, lives in Watertown, New York. On January 5, 2021, defendant traveled from Watertown to Virginia, via automobile, with her son and co-defendant, RAFAEL RONDON. The purpose of the defendant's trip to the Washington, D.C., area was to attend a political rally dubbed "Stop the Steal" in protest of Congress' certification of the Electoral College vote.

9. On or about January 6, 2021, MOONEY-RONDON rode the Metro into D.C. MOONEY-RONDON and RONDON attended the "Stop the Steal" rally and then marched with other protestors to the U.S. Capitol.

10. At approximately 2:23 p.m., defendant MOONEY-RONDON entered the U.S. Capitol through the breached Senate Wing Door with RONDON, as shown in Exhibit 1.



*Still from Exhibit 1 – MOONEY-RONDON enters the Capitol building*

11.     MOONEY-RONDON and RONDON proceeded together through the Crypt on the first floor and up to the second floor of the U.S. Capitol. At approximately 2:32 p.m., MOONEY-RONDON and RONDON entered the office suite of the Speaker of the House of Representatives, near Room H227.

12.     At approximately 2:33 p.m., MOONEY-RONDON and RONDON entered the Speaker of the House of Representative's Conference Room, H230. Therein, MOONEY-RONDON and RONDON encouraged an unidentified male to steal a laptop computer located on the Conference Room table, as shown in Exhibit 2. Referring to the laptop computer, MOONEY-RONDON told the unidentified male, "It would be interesting to see what's on that hard drive."



*Still from Exhibit 2 – MOONEY-RONDON speaking to unidentified male with laptop computer*

13.     MOONEY-RONDON then assisted in the theft by providing her gloves to the unidentified male to retrieve the laptop computer without leaving fingerprint evidence on the device, as shown in Exhibit 3. The unidentified male then took the laptop computer.



*Still from Exhibit 3 – MOONEY-RONDON provides gloves to unidentified male*

14. At approximately 2:42 p.m., MOONEY-RONDON and RONDON entered the Senate Gallery, which overlooks the Senate Floor, as shown in Exhibit 4.



*Exhibit 4 – MOONEY-RONDON in the Senate Gallery*

15. MOONEY-RONDON and RONDON each took an ILC Dover SCape CBRN30 escape hood with satchel (a black pouch with an orange strap), which is a filtering respiratory protective device maintained in the U.S. Capitol for Members of Congress and staff.

16. At approximately 2:52 p.m., MOONEY-RONDON and RONDON exited the U.S. Capitol via the Rotunda steps onto the East Front. At that time, RONDON was wearing the escape hood on his head and MOONEY-RONDON was wearing an escape hood satchel across her chest, as shown in Exhibit 5.



*Exhibit 5 – MOONEY-RONDON wearing emergency escape hood satchel*

17. On June 29, 2021, the FBI executed a search warrant at MOONEY-RONDON's residence in Watertown, New York. During the residential search, two emergency escape hood satchels that were taken from the U.S. Capitol were found.

18. During a voluntary interview with the FBI, MOONEY-RONDON acknowledged entering the U.S. Capitol building on January 6, 2021. MOONEY-RONDON admitted she knew prior to her entry that the Presidential election results were being certified inside the Capitol building at that time. MOONEY-RONDON further advised that prior to her entry she saw police officers with shields outside the Capitol and witnessed members of the crowd pushing against the officers, and that she smelled tear gas.

19. MOONEY-RONDON admitted to traveling to Speaker of the House of Representative's Conference Room upon entering the Capitol building. MOONEY-RONDON admitted to providing either her gloves or scarf to an unidentified male to assist in the theft of a laptop computer. MOONEY-RONDON confirmed that her arm is shown in the above-referenced still from Exhibit 3. MOONEY-RONDON stated that she saw "the gentleman that took the



*Exhibit 5 – MOONEY-RONDON wearing emergency escape hood satchel*

17. On June 29, 2021, the FBI executed a search warrant at MOONEY-RONDON's residence in Watertown, New York. During the residential search, two emergency escape hood satchels that were taken from the U.S. Capitol were found.

18. During a voluntary interview with the FBI, MOONEY-RONDON acknowledged entering the U.S. Capitol building on January 6, 2021. MOONEY-RONDON admitted she knew prior to her entry that the Presidential election results were being certified inside the Capitol building at that time. MOONEY-RONDON further advised that prior to her entry she saw police officers with shields outside the Capitol and witnessed members of the crowd pushing against the officers, and that she smelled tear gas.

19. MOONEY-RONDON admitted to traveling to Speaker of the House of Representative's Conference Room upon entering the Capitol building. MOONEY-RONDON admitted to providing either her gloves or scarf to an unidentified male to assist in the theft of a laptop computer. MOONEY-RONDON confirmed that her arm is shown in the above-referenced still from Exhibit 3. MOONEY-RONDON stated that she saw "the gentleman that took the

computer," explaining further, "I'm pretty sure I saw [the unidentified male] put it in a backpack… probably 100 percent."

20. MOONEY-RONDON acknowledged traveling to the Senate Gallery. MOONEY-RONDON admitted to stealing an emergency escape hood and satchel as she departed the Capitol building.

21. MOONEY-RONDON knew at the time she entered the U.S. Capitol Building that she did not have permission to enter the building. The defendant obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18. MOONEY-RONDON was aware of the ongoing Congressional session on January 6, 2021, and that its purpose was to certify the results of the election.

22. An unidentified male took a laptop computer located in the offices of a member of the U.S. Congress, which property belonged to the United States at the time it was taken. When the unidentified male took the laptop computer he intended to deprive, without right, the owner of the use or benefit of the laptop computer. The laptop computer taken had a value of less than $1,000.

23. MOONEY-RONDON knew that the theft of the laptop computer, which was property of the United States, was going to be committed or was being committed by the unidentified male. MOONEY-RONDON performed an act or acts in furtherance of the offense, specifically, providing her gloves to the unknown male such that he would not leave fingerprint evidence on the laptop computer. MOONEY-RONDON knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the unidentified male in

committing the theft of the laptop computer. MOONEY-RONDON did that act or acts with the intent that the unidentified male commit the offense of theft of government property.

24. If the Court finds the existence of these facts beyond a reasonable doubt, the defendant stipulates that this evidence would establish each and every element of the charged offenses for Counts 1 and 3 of the Indictment. ECF No. 15.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By: _____
        WILL N. WIDMAN
        Trial Attorney, detailee
        NC Bar No. 48158
        1301 New York Avenue NW, 8th Floor
        Washington, DC 20530
        (202) 353-8611
        Will.Widman@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, MARYANN MOONEY-RONDON, have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Peter Cooper, Esquire. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: March 24, 2023

MARYANN MOONEY-RONDON
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts for Stipulated Trial with my client, Maryann Mooney-Rondon, and fully discussed it with my client.

Date: 24 March 2023

PETER COOPER
Attorney for Defendant Mooney-Rondon