## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-00722-JMC** |
| **MARYANN MOONEY-RONDON** | |
| **Defendant.** | |

### UNITED STATES' MEMORANDUM IN SUPPORT OF RESENTENCING

Maryann Mooney-Rondon, the owner of a medical billing company, entered the U.S. Capitol Building through the Senate Wing Door on January 6, 2021, at approximately 2:23 p.m., ten minutes after it was first breached. Together with her son, Rafael Rondon ("Rondon"), Mooney-Rondon traveled through the Capitol building, eventually arriving at the Speaker of the House of Representatives' office suite, where she encouraged and assisted an individual in stealing a laptop computer. Mooney-Rondon assisted the theft by giving the individual her gloves so he would not leave fingerprints on the computer. Mooney-Rondon and Rondon then traveled to the Senate Gallery, where they stole emergency escape hoods and satchel bags meant to store those devices. Based on Mooney-Rondon's conduct, this Court sentenced Mooney-Rondon to 5 years' probation with the first 12 months as home incarceration, $3,657.51 in restitution to the Architect of the Capitol, a fine of $7,500, and 350 hours of community service as a condition of probation. The Court found at sentencing, this defendant's conduct was serious, and the sentence imposed was sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

Though the government agreed to vacate the conviction on Count One in light of *Fischer v. United States*, 144 S. Ct. 2176, 219 L. Ed. 2d 911 (2024), Mooney-Rondon's conduct did not

change, and this Court should not reduce Mooney-Rondon's sentence. *See United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up) ("*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021, in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct."). Accordingly, for the reasons set forth herein, the United States requests that this Court impose a substantially similar sentence of 5 years' probation with the first 12 months as home incarceration, $2,157.51 in restitution, a fine of $7,500, and 350 hours of community service as a condition of probation.

## I.    FACTUAL BACKGROUND

Defendant Mooney-Rondon's role in the Capitol attack has been well documented. The Government need not recount it at length here and refers the Court to the Government's 2023 Sentencing Memorandum for a full discussion of Mooney-Rondon's criminal conduct. *See* ECF No. 64 ("Government's Sentencing Memo"). Suffice it to say, Mooney-Rondon, together with her son, entered the U.S. Capitol with the intent of disrupting the certification of the 2020 presidential election and, once inside, she assisted in the theft of a laptop computer belonging to the Speaker of the House of Representatives, occupied the Senate Gallery where certification proceedings had recently been ongoing, and stole emergency escape hoods and satchel bags. Mooney-Rondon and Rondon were inside the Capitol building for approximately 30 minutes. When they exited, both were still wearing stolen escape hoods from the Senate Gallery.

## II.    RELEVANT PROCEDURAL HISTORY

On December 8, 2021, a federal grand jury returned a nine-count indictment charging Mooney-Rondon and Rondon with Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2 (Count One); Theft of Government Property (Escape

Hoods with Satchels), in violation of 18 U.S.C. § 641 (Count Two); Theft of Government Property (Laptop Computer), and aiding and abetting, in violation of 18 U.S.C. §§ 641, 2 (Count Three); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); Entering and Remaining in the Gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B) (Count Six); Entering and Remaining in the Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Seven); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), (Count Eight); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), (Count Nine).

On March 27, 2023, the Court held a bench trial on stipulated facts for Mooney-Rondon on Count One (obstruction of an official proceeding) and Count Three (theft of the laptop). The Court convicted Mooney-Rondon on both charges. The government agreed to dismiss the remaining counts at sentencing.

On November 29, 2023, this Court sentenced Mooney-Rondon to 5 years of probation on Counts One and Three, to run concurrently, with the first 12 months of probation to be served as home incarceration, a special assessment of $100 on Count One and $25 on Count Three (totaling $125), a fine of $7,500, restitution in the amount of $3,657.51, and 350 hours of community service as a condition of probation. *See* ECF No. 95 (Judgment). As agreed, the government moved, and the Court agreed, to dismiss the remaining counts.

Mooney-Rondon timely appealed her conviction and sentence on Count One. No. 23-3236 (D.C. Cir. 2023). While her appeal was pending, on June 28, 2024, the U.S. Supreme Court decided *Fischer v. United States*, 144 S. Ct. 2176 (2024), narrowing the scope of conduct prohibited by

Section 1512(c)(2). Accordingly, on August 22, 2024, the parties jointly moved for the D.C. Circuit to vacate Mooney-Rondon's conviction. On September 9, 2024, the D.C. Circuit issued a mandate, vacating the defendant's conviction on Count One and remanding her case to the District Court for further proceedings. ECF No. 116. At the parties' joint request, ECF No. 117, this Court set a resentencing hearing for November 19, 2024. At resentencing, Mooney-Rondon should be sentenced based on her conviction on the one remaining count, Count Three, aiding and abetting the theft of the Speaker's laptop, in violation of 18 U.S.C. §§ 641, 2.

## III.    STATUTORY PENALTIES

For her conviction under 18 U.S.C. §§ 641 and 2, Mooney-Rondon faces up to one year of imprisonment, up to five years of probation, a fine up to $100,000, and a term of supervised release of up to one year.

## IV.    THE SENTENCING GUIDELINES

The government calculates Mooney-Rondon's new offense level under the Guidelines for Count Three as follows:

Count Three: 18 U.S.C. §§ 641, 2

| | | | |
|---|---|---|---|
| U.S.S.G. § 2B1.1(a)(2) | Base Offense Level | | 6 |
| U.S.S.G. § 3A1.2(a) | Official victim | | +3 |
| | | **Sub-Total** | **9** |
| U.S.S.G. §3E1.1 | Acceptance of Responsibility | | -2 |
| U.S.S.G. § 4C1.1 | Zero-Point Offender | | <u>-2</u> |
| **Total Adjusted Offense Level:** | | | **5** |

The U.S. Probation Office calculated Mooney-Rondon's criminal history as Category I, which is not disputed. *See* Pre-Sentence Investigation Report, ECF No. 77 (PSR), at ¶ 48. With a total offense level of 5, the corresponding Guidelines imprisonment range, as calculated by the government, is 0-6 months. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table.

**V.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

After calculating the Guidelines, the Court should next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49, 50, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). This two-prong "sentencing framework applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal." *Pepper v. United States*, 562 U.S. 476, 490, 131 S. Ct. 1229, 1241, 179 L. Ed. 2d 196 (2011) (citing 18 U.S.C. § 3742(g) ("A district court to which a case is remanded ... shall resentence a defendant in accordance with section 3553") and *Dillon v. United States*, 560 U.S. 817, 828, 827, 130 S. Ct. 2683, 2692, 177 L.Ed.2d 271 (2010)). Although "the Supreme Court's decision in *Fischer* may ultimately change the Guidelines recommendation for [a defendant], *Fischer* does not dictate the Court's application of the 18 U.S.C. § 3553(a) factors to [that defendant's] remaining convictions[, and t]he Court may still consider [the defendant's] serious conduct on January 6th, 2021 in its entirety, even if the court of appeals concludes that this conduct no longer constitutes a crime under 18 U.S.C. § 1512." *Hostetter*, 1:21-CR-392-1-RCL, ECF 507 (July 18, 2024 Order Denying Motion for Release from Custody Pending Appeal) at 4.

Despite the dismissal of Count One, the Government respectfully submits that the sentencing factors under 18 U.S.C. § 3553(a) warrant nothing less than a sentence substantially similar to the sentence previously imposed: 5 years' probation with the first 12 months as home incarceration, $2,157.51 in restitution, a fine of $7,500, and 350 hours of community service as a condition of probation. That sentence remains the minimum necessary to achieve the goals of sentencing, especially in light of the unique nature of Mooney-Rondon's offense and her intent to obstruct the certification of the election.

### A.    The Nature and Circumstances of the Offense Support the Court's Original Sentence

Defendant Mooney-Rondon was an avid and willing participant in an unprecedented crime. She joined a mob that threatened the lives of legislators and their staff, interrupted the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. Her offenses targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Mooney-Rondon "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

But nothing in the Guidelines calculation for Count Three reflects these facts. Mooney-Rondon would face the same offense level if her conduct on January 6 had not endangered the democratic process or interfered with the peaceful transfer of power.[1] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of

---

[1] The D.C. Circuit's holding in *Brock*, 94 F.4th 39, finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176, 2195 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85.

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducting the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. "January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy." *United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53; *see also United States v. Fitzsimons*, 21-CR-158-RC, Sent. Tr., at 85-86. ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy."). There can be no doubt that it caused a significant disruption to a vital governmental function. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual

rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

### B.    The History and Characteristics of the Defendant

Mooney-Rondon is a 58-year-old retired fiscal coordinator for a medical billing company from Watertown, New York. PSR ¶ 69. She does not have any other prior arrests or criminal convictions. *Id.* at ¶ 48.

### C.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Mooney-Rondon's criminal conduct on January 6 was the epitome of disrespect for the law. *United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.    The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2]

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a sentence no less than originally imposed.

Unlike some other January 6 defendants, Mooney-Rondon has accepted responsibility for her actions. However, her minimizing and self-serving statements to the FBI in 2021, suggest that she only began to fully appreciate why her conduct was wrong after she was arrested and prosecuted. The Court's sentence must be serious enough to deter Mooney-Rondon from future unlawful conduct triggered by election outcomes that she does not like, or for any other reason.

### E.    Unwarranted Sentencing Disparities

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentence in *United States v. Vinson et al*, 21-cr-355-RBW, provides a suitable comparison to the relevant sentencing considerations in this case. In that case, defendants Lori and Thomas Vinson, who are married, each plead guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Picketing, and Demonstrating Inside a Capitol Building. *Id.* at ECF Nos. 28 and 30. On January 6, the Vinsons entered the Capitol building through the breached Senate Wing Door about five minutes before Mooney-Rondon. From there, the Vinsons travelled to the Crypt, the Office of Attending Physician corridor, and the Rotunda. Like Mooney-Rondon, the Vinsons were inside the Capitol building for approximately 30 minutes. Lori Vinson made several post-January 6 statements evincing lack of remorse, similar to Mooney-Rondon. Judge Walton sentenced both Vinsons to 5 years' probation, a $5,000 fine, and $500 in restitution.

The Court should also consider the sentences of January 6 defendants who plead guilty to theft of government property and received some jail time. In *United States v. Philip Vogel,* 21-cr-289-RDM, defendant Vogel pled guilty to Theft of Government Property, and Aiding and Abetting, in violation of 18 U.S.C. §§ 641, 2. *Id.* at ECF No. 60. On January 6, Vogel and his

girlfriend Debra Maimone ("Maimone") entered the Senate Wing door of the Capitol building at approximately 2:26 p.m., about three minutes after Mooney-Rondon. Vogel went to the Crypt and to the Rotunda. Like Mooney-Rondon, Vogel then made his way to a sensitive area: the Senate Gallery. There, just like Mooney-Rondon, Vogel stole escape hoods and satchel bags. *See id.* at ECF No. 61. Vogel stole other items from the Capitol, including gas masks. Judge Moss sentenced Vogel to 30 days' incarceration, followed by one year of supervised release, and $1,806 in restitution for stolen items.

In *United States v. Shelly Varney,* 22-cr-372-JDB, defendant Varney pled guilty to Theft of Government Property, in violation of 18 U.S.C. § 641, and Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). *Id.* at ECF No. 9. On January 6, Varney entered the Capitol building through the Upper West Terrace doors. Varney traveled to the Rotunda and then, just like Mooney-Rondon, to a sensitive area: then-Minority Leader Kevin McCarthy's office. Varney returned and exited through the Rotunda doors. At some point while Varney was near the Rotunda, she stole an American flag and flagpole. Varney later admitted that she purposefully destroyed these items to conceal evidence of her crimes. Judge Bates sentenced Varney to 24 days' incarceration, followed by one year of supervised release, a fine of $1,000, and $500 in restitution.

Importantly, unlike Mooney-Rondon, neither the Vinsons, Vogel, nor Varney were found guilty of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512. Mooney-Rondon's admission that she knew that Congress was certifying the results of the 2020 presidential election prior to her entry distinguishes this case. As detailed above, nothing in Mooney-Rondon's new Guidelines calculation adequate captures her corrupt intent to obstruct the certification of the election results. Additionally, Mooney-Rondon traveled to not one, but two sensitive areas within

the Capitol—the Speaker's office suite and the Senate Gallery. In the Speaker's conference room, Mooney-Rondon assisted in the theft of a laptop computer. Mooney-Rondon stated she suspected that the computer could contain "interesting" information, which the individual she was helping could exploit. Further, Mooney-Rondon herself stole escape hoods and satchel bags. Mooney-Rondon's conduct was demonstrably worse than that of the Vinsons, Vogel, and Varney, and thus, the Court should not sentence Mooney-Rondon below the original sentence of 5 years' probation with the first 12 months as home incarceration.

### F.    RESTITUTION

Mooney-Rondon did not plead guilty, and the government is not bound by a plea agreement to request a particular amount of restitution. The Court previously imposed $3,657.51 in restitution, which included $2,000 in restitution for the overall damage to the U.S. Capitol caused by rioters. This $2,000 amount was the same restitution that virtually every January 6 defendant convicted of a felony has been required to pay. The government now requests that this Court order Mooney-Rondon to pay $500 in restitution, since Mooney-Rondon is being resentenced for a single misdemeanor, plus the amount of loss that Mooney-Rondon personally caused by her offense conduct.

The laptop computer, which has not been recovered, was purchased in August 2020 for $1,187.15. The satchel bags were located in a search of the Rondon and Mooney-Rondon home, but the United States has been unable to locate the emergency escape hoods. The satchel bags agents recovered from the defendant's home are useless without the escape hoods. The stolen escape hoods and bags together caused a total loss of $470.36.

Based on the above, the government asks the Court to impose $2,157.51 in restitution.

### G.    FINE

The Court, in its discretion, previously ordered Mooney-Rondon pay a fine of $7,500 as part of its original sentence. Under the defendant's new Guidelines calculation, the high end of the fine range is $5,000. The government submits that given the seriousness of Mooney-Rondon's conduct, a fine of $7,500 remains appropriate.[3]

### VI.    CONCLUSION

For the reasons set forth above, and as fully supported by the facts and the law, the government recommends that the Court resentence Mooney-Rondon to 5 years' probation with

---

[3] Since this represents a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the *specific* reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. *United States v. Iracks*, 106 F.4th 61, 67 (D.C. Cir. 2024) (alteration and emphasis in original) (quoting 18 U.S.C. § 3553(c)(2)). Accordingly, the government requests that in imposing this fine, the Court make specific findings that Mooney-Rondon's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Dawayne Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *United States v. James Brown*, 808 F.3d 865, 867 (D.C. Cir. 2015)).

the first 12 months as home incarceration, $2,157.51 in restitution, a fine of $7,500, and 350 hours of community service as a condition of probation.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney
DC Bar No. 481052

By:    _s/ Will N. Widman_
       WILL N. WIDMAN
       NC Bar No. 48158
       Trial Attorney, Detailee
       1301 New York Avenue NW, 8th Floor
       Washington, DC 20530
       (202) 353-8611
       Will.Widman@usdoj.gov